IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00415-CR

 

Ex
parte James Harnage

 

 

 

 



From the 87th District
Court

Freestone County, Texas

Trial Court No. 07-071-CR

 



ABATEMENT ORDER



 








            James Harnage filed a
pretrial habeas application and motion to dismiss his capital murder prosecution
because of delay in excess of that permitted by the Interstate Agreement on
Detainers Act.  Following a hearing, the court orally announced its decision to
deny Harnage’s habeas application and motion to dismiss.  Harnage filed a
notice of appeal, but the trial court has not signed a written order.

            The time to perfect an
appeal in such a case runs from the date “the trial court enters an appealable
order.”  Tex. R. App. P. 26.2(a)(1). 
A court “enters an appealable order” in this context by signing a written order
memorializing its ruling.  See In re Johnston, 79 S.W.3d 195, 197-98 (Tex. App.—Texarkana 2002, orig. proceeding); State v. Shaw, 4 S.W.3d 875, 877-78
(Tex. App.—Dallas 1999, no pet.); State v. Acosta, 948 S.W.2d 555, 556
(Tex. App.—Waco, order) (per curiam), disp. on merits, 951 S.W.2d 291
(Tex. App.—Waco 1997, pet. ref’d).

            Because there is no written
order, Harnage’s notice of appeal is premature.  See Tex. R. App. P. 27.1(b); Harrison v.
 Tex. Dep’t of Criminal Justice, 134 S.W.3d 490, 491 (Tex. App.—Waco 2004,
order) (per curiam).  Nevertheless, it appears that the trial court intended to
render an appealable order.  Therefore, we abate this cause to the trial court
for further consideration.  See Harrison, 134 S.W.3d at 492.  If the
court intended to render an appealable order, then it should sign and enter an
appropriate written order to effectuate its intent.  Id.

            In addition, we note that no
certification of the defendant’s right of appeal is included in the clerk’s
record.  Rule of Appellate Procedure 25.2(a)(2) provides in pertinent part, “The
trial court shall enter a certification of the defendant’s right of appeal each
time it enters a judgment of guilt or other appealable order.”  Tex. R. App. P. 25.2(a)(2) (emphasis
added).  Subsection (d) of the same rule then provides:

The certification should be part of the
record when notice is filed, but may be added by timely amendment or
supplementation under this rule or Rule 34.5(c)(1) or Rule 37.1 or by order of
the appellate court under Rule 34.5(c)(2).  The appeal must be dismissed if a
certification that shows the defendant has the right of appeal has not been
made part of the record under these rules.

 

Id. 25.2(d).

            Therefore, if the trial
court intended to render an appealable order, then it must also sign and enter
a certification of the defendant’s right of appeal.  See 25.2(a)(2),
(d), 34.5(c)(2).

            The trial court shall,
within twenty-one days after the date of this Order: (1) conduct a hearing if
necessary; (2) make and sign appropriate orders, findings of fact and
conclusions of law, and a certification of the defendant’s right of appeal, if
applicable; and (3) deliver any such signed documents to the trial court clerk. 
 Id.

            The trial court clerk shall:
(1) prepare a supplemental clerk’s record containing all orders, findings of
fact and conclusions of law, and any certification of the defendant’s right of
appeal which the trial court renders or makes; and (2) file the supplemental
clerk’s record with the Clerk of this Court within thirty days after the date
of this Order.  Id.

PER CURIAM

 

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

(Chief
Justice Gray concurring in part and dissenting in part with note)*

Appeal abated

Order issued
and filed February 11, 2009

Do not publish

[CRPM]

 

*           (Chief
Justice Gray concurs in part and dissents in part.  A separate order will not
issue.  He notes, however, that due to an amendment in the language of the rule
he does not believe a written and signed order is necessary to bring an appeal
in this proceeding.  He also notes, in passing, that historically trial courts
render or sign orders and judgments and, if they are entered, they are entered
in the record or minutes of the court by the clerk.  He concurs in the need for
a certification of the right to appeal.)





Self-Respresentation

            Colomb wanted to represent himself
during his trial.  He now argues on appeal that his decision to dispense with
counsel was not made knowingly, intelligently, and voluntarily with full
understanding of the right to counsel and with proper admonishments.  He also
complains that his court appointed counsel was never relieved of her duty to
represent him.

            Law

            The Sixth Amendment to the
Constitution of the United States guarantees that "[in] all criminal
prosecutions, the accused shall enjoy the right . . . to have the Assistance of
Counsel for his defense."  U.S. CONST. AMEND. VI; Williams v. State,
252 S.W.3d 353, 355 (Tex. Crim. App. 2008).  It also includes the reciprocal
right to self-representation.  Faretta v. California, 422 U.S. 806, 818, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); Williams, 252 S.W.3d at 356.  But the
right to self-representation does not attach until it has been clearly and
unequivocally asserted.  Funderburg v. State, 717 S.W.2d 637, 642 (Tex.
Crim. App. 1986).  Once the right is asserted, the trial judge must inform the
defendant about "the dangers and disadvantages of self-representation, so
that the record will establish that 'he knows what he is doing and his choice
is made with eyes open."'  Faretta, 422 U.S. at 835 (quoting Adams
v. United States, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).  

            Colomb primarily relies on Geeslin
for a laundry list of inquiries that he believes the court failed to make, and,
his argument continues, because of that failure, Colomb was not warned properly
of the dangers and disadvantages of self-representation.  See Geeslin
v. State, 600 S.W.2d 309 (Tex. Crim. App. 1980).  However, that laundry
list is no longer required.  Not long after Geeslin was issued, the
Court of Criminal Appeals distanced itself from Geeslin’s requirements. 
In Martin, the Court stated, “The Faretta opinion simply cannot
reasonably be read to require that a trial judge spread upon the record all
such information and data about an accused that might conceivably impugn his
decision to represent himself; rather, its approach is to provide awareness of
problems in the undertaking so that the decision is not lightly made.”  Martin
v. State, 630 S.W.2d 952, 954 n. 5 (Tex. Crim. App. 1982).  See also
Lambrect v. State, 681 S.W.2d 614, 615 n. 1 (Tex. Crim. App. 1984) (The
Court in Martin “observed that prior decisions of this Court which had
iterated exacting ‘requisites’ for establishing a knowing waiver of counsel,
[e.g., Barbour v. State, 551 S.W.2d 371 (Tex.Cr[im].App. 1977); Goodman
v. State, 591 S.W.2d 498 (Tex.Cr[im].App. 1980); and Geeslin v. State,
600 S.W.2d 309 (Tex.Cr[im].App. 1980)], had read Faretta
incorrectly.”).  Such an inquiry as Geeslin demanded is unnecessary in
cases where the record otherwise reflects a knowing exercise of the right to self-representation. 
Blankenship v. State, 673 S.W.2d 578, 586 n. 1 (Tex. Crim. App. 1984)
(Clinton, J., concurring).

            Thus, when advising a defendant about
the dangers and disadvantages of self-representation, there is no litany for
the trial court to use, “no formulaic questioning.”  Johnson v. State,
760 S.W.2d 277, 278 (Tex. Crim. App. 1988) (quoting Blankenship v. State,
673 S.W.2d 578, 583 (Tex. Crim. App. 1984)).  Generally, the record must be
sufficient for the reviewing court to make an assessment that appellant
knowingly exercised his right to defend himself.  Id. at 279. 
Admonishments should include an effort to ensure that the defendant is aware of
the practical disadvantages of representing himself.  Id.  The defendant
should be aware that there are technical rules of evidence and procedure and
that he will not be granted any special consideration solely because he
asserted his pro se rights.  Id.  But a trial judge has no duty to
inquire into an accused's "age, education, background or previous mental
history in every instance where an accused expresses a desire to represent
himself[.]"  Williams v. State, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008) (quoting Goffney v. State, 843 S.W.2d 583, 584-85 (Tex. Crim.
App. 1992)).

            Facts

            Sarah Keathley was initially appointed
to represent Colomb.  Over a month later, Colomb wrote to the court expressing
his desire to represent himself.  The next month, Colomb filed a motion to
dismiss Sarah as his court appointed counsel.  Four months after Sarah’s
appointment, Steve Keathley[1] filed
a motion to withdraw as counsel for Colomb.  A hearing was held at which both
Sarah and Colomb were present.  At the beginning of the hearing, the trial
court acknowledged that a motion to withdraw was filed by the Keathley law
firm.  After the trial court heard testimony from Sarah, Colomb stated that he
did not want the Keathleys to represent him.  The motion to withdraw was
granted and specifically, the trial court told Sarah that she was “relieved at
this point….”

            Colomb unequivocally, in writing and
in open court, asserted that he wanted to represent himself.  After counsel was
relieved, and at the same hearing, the trial court noted that Colomb had been
in the criminal justice system for a good while and had a lot of knowledge
about the criminal justice system.  The indictment reflects that Colomb had at
least two prior convictions for theft and two prior felony convictions.  The
court verified that Colomb had had an attorney on other cases over the years. 
The court admonished Colomb that he had a right to an attorney whether he could
afford one or not and that the court would be willing to appoint an attorney if
Colomb could not afford an attorney.  Colomb understood that if he wanted to
represent himself, he would be doing so openly, intentionally, knowingly, and
willingly and that the court would allow Colomb to represent himself as long as
Colomb’s “eyes are wide open” and Colomb knew what he was doing.  

            Colomb again affirmed that he wanted
to proceed without an attorney.  He understood the role of the prosecutor.  He
understood that the prosecutor could not represent Colomb at the same time she
represented the State.  He understood that the judge was not in a position to
give Colomb any legal advice.  He understood, to some degree, the role of the
jury, the burden of proof, and what a defense attorney would do for him. 
Colomb agreed that he had at least a basic understanding of those things.  The
court admonished Colomb that there were some inherent disadvantages of
self-representation and that he would not have anyone to sit with him and
advise him about evidence, proof and procedures, and “all those kinds of things
that lawyers are trained to know and understand.”  Colomb stated that he
understood this admonishment.  The court then asked, “[H]aving understood all
those matters, [do] you still want to represent yourself?”  Colomb replied,
“Yes, sir.”  The trial court then allowed Colomb to represent himself.  

            A month after the hearing, Colomb
signed a form waiver of counsel which the trial court approved.  Further, on
the day of trial, the court confirmed that Colomb had asked for his court
appointed counsel to be withdrawn.  Also on the day of trial, Colomb confirmed
with the trial court that there was an approved waiver of counsel in the file.

            Application

            Given these facts and circumstances,
we find the record establishes that Colomb’s decision to dispense with counsel
was made knowingly, intelligently, and voluntarily with full understanding of
the right to counsel and with proper admonishments.  And because Colomb waived
his right to counsel, his complaint that his appointed attorney was never
officially relieved of her duties to represent him is irrelevant.  Colomb’s
second and third issues are overruled.

Ineffective Assistance of Counsel

            Colomb also claims that prior to the
trial court allowing him to represent himself, his counsel was ineffective
because she attempted to transfer the responsibility of representation to her
husband and partner in the law firm and did not interview Colomb or perform any
tasks during the time from her appointment to the time of the hearing on the
motion to withdraw, which encompassed a little over four months.  

            To prove ineffective assistance of
counsel, a defendant must show that: (1) counsel's performance was deficient to
the extent that counsel failed to function as the "counsel"
guaranteed by the Sixth Amendment and (2) that counsel's deficient performance
prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).  To establish prejudice, a defendant
must show there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been different. 
Wiggins v. Smith, 539 U.S. 510, 534, 123 S. Ct. 2527, 156 L. Ed. 2d 471
(2003).  

            Colomb makes assumptions about what
counsel may or may not have done using statements in his own motions and
generalized testimony by counsel at the hearing on the motion to withdraw.  But
this record, however, is undeveloped and cannot adequately reflect the motives
behind counsel's alleged actions and inactions.  See Goodspeed v. State,
187 S.W.3d 390, 392 (Tex. Crim. App. 2005).  Counsel should ordinarily be
afforded an opportunity to explain her actions.  Id.  Absent such an
opportunity, an appellate court should not find deficient performance unless
the challenged conduct was "so outrageous that no competent attorney would
have engaged in it."  Id.  (citing Garcia v. State, 57
S.W.3d 436, 440 (Tex. Crim. App. 2001)).  

            Just less than two months after
counsel was appointed, Colomb asserted his right to self-representation. 
Further, there is nothing in this record to show what was done by counsel and
whether counsel tried to transfer responsibility of representation to her
husband.  Accordingly, based on this record we cannot find deficient
performance by counsel.  Colomb’s fourth issue is overruled.

Continuance

            Colomb asserts that the trial court
erred in failing to grant his request for a continuance on the day of trial.  A
criminal action may be continued on the defendant's written and sworn motion
showing sufficient cause.  Tex. Code
Crim. Proc. Ann. arts. 29.03, 29.08 (Vernon 2006).  An unsworn, oral
motion for continuance presents nothing for appellate review.  Dewberry v.
State, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999); Matamoros v.
State, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995); Potter v. State,
74 S.W.3d 105, 110 (Tex. App.--Waco 2002, no pet.); see Tex. R. App. P. 33.1(a).

            Colomb made an unsworn, oral motion
for continuance to the trial court on the day of trial.  Accordingly, nothing
is presented for review; and Colomb’s fifth issue is overruled.




Conclusion

            Having overruled each of Colomb’s
issues on appeal, we affirm the trial court’s judgment of conviction.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before
Chief Justice Gray,

            Justice
Reyna, and

            Justice
Davis

Affirmed

Opinion
delivered and filed April 29, 2009

Do
not publish 

[CR25]









[1] It
was established at the hearing on the motion to withdraw that Steve Keathley,
who is also an attorney, is Sarah’s husband.